Slip Op. 14-92

# UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| **FORMER EMPLOYEES OF THE BOEING COMPANY, BOEING DEFENSE AND SPACE DIVISION, WICHITA, KS,** <br><br> Plaintiffs, <br><br> v. <br><br> **U.S. SEC'Y OF LABOR,** <br><br> Defendant. | Before: Gregory W. Carman, Judge <br> Court No. 13-00281 |

## OPINION & ORDER

[Defendant's Remand Results are sustained; Plaintiffs' motion for remand is denied.]

*Steven D. Schwinn* of Chicago, IL, for plaintiffs.

*Antonia R. Soares*, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for defendant. With her on the brief were *Stuart F. Delery*, Assistant Attorney General, *Jeanne E. Davidson*, Director, and *Claudia Burke*, Assistant Director. Of Counsel on the brief was *Jonathan Hammer*, Office of the Solicitor, U.S. Department of Labor, of Washington, DC.

August 11, 2014

**CARMAN, JUDGE:** Before the Court is Defendant U.S. Secretary of Labor's ("Labor" or "Defendant") Notice of Negative Determination On Remand ("Remand Results"), ECF No. 9-1, regarding the Certification of Group Eligibility for Worker Adjustment Assistance for Former Employees of the Boeing Company, Boeing Defense and Space Division, Wichita, Kansas

("Boeing Wichita" or "Plaintiffs"). For the reasons set forth below, the Court sustains Defendant's Remand Results and denies Plaintiffs' motion for remand.

## BACKGROUND

In 2005, the Boeing Company sold the Boeing Commercial Aircraft ("BCA") Division and the corresponding support parts in its Wichita, Kansas facility, resulting in the Boeing Defense and Space ("BDS") Division as the only remaining entity at that facility. A.R.[1] at 24, ECF No. 10.[2] The Boeing Wichita facility worked on programs owned by the U.S. and foreign military. *Id*. Labor discovered that the Boeing Wichita facility did not engage in new production of commercial or military aircraft but rather modified existing military aircraft. *Id*. at 25. The stream of modification work at the Boeing Wichita facility was inconsistent, but "[m]anagement at the Wichita facility continue[d] to proactively seek modification work for the [Boeing Wichita facility]. For example, mod work on seven aircraft was moved from a foreign company to" the Boeing Wichita facility, which increased work output from 2006 to 2008. *Id*. (emphasis in original). Despite management's effort, the Boeing Wichita facility continued to struggle financially and this "became a complex issue that resulted in either laying employees off and then attempting to recall them or loaning them for long lengths of time to Seattle where the work was usually more constant." *Id*. at 24. The record shows that the lack of work coupled with the U.S. Department of Defense's budget cuts led to Boeing's decision to close its Wichita facility this summer. *Id*.

On May 14, 2013, a union official from the International Association of Machinists & Aerospace Workers ("IAM"), District Lodge # 70, filed a petition on behalf of the former

---

[1] A.R. stands for the public administrative record.
[2] The public administrative record is broken up into six parts on ECF. In their briefs, parties cite to pages in the record as a whole, not in parts. The Court does the same.

employees of the Boeing Company, BDS Division, in Wichita, Kansas for group certification for Trade Adjustment Assistance ("TAA"). A.R. at 1-3. During its review of Petitioners' application for certification eligibility, Labor learned that the Boeing Wichita's facility did not produce commercial aircraft during the period of investigation and had not produced military aircraft for several years even predating the period of investigation from March 8, 2012 to May 8, 2013. Def.'s Resp. to Pls.' Comments on the Dep't of Labor's Remand Results and Mot. for Second Remand ("Def.'s Resp.") at 18 (citing A.R. at 49-50, 458, 461-62), ECF No. 23. Rather, Labor discovered that Plaintiffs were engaged in employment related to the maintenance and modification of military aircraft covered by the International Traffic in Arms Regulations ("ITAR"). Such work "cannot be completed outside of the United States" and thus does not meet the TAA eligibility requirements according to Labor. Remand Results at 4.

Plaintiffs argued that they stand in the same position as the certified former employees of the Boeing facility in Seattle. Pls.' Comments on Def.'s Remand Results and Mot. for Second Remand ("Pls.' Comments") at 12, ECF No. 21. However, Labor distinguished Plaintiffs' situation:

> [D]ue to the nature of the services supplied by the subject worker group and the laws and regulations governing the services provided by the subject firm worker group, the work is not considered to be interchangeable with the work performed by other certified Boeing facilities.

Remand Results at 5. On June 12, 2013, Labor issued a negative determination for Plaintiffs' application for TAA group certification. *Notice of Determination Regarding Eligibility to Apply for Worker Adjustment Assistance*, 78 Fed. Reg. 39,776 (Dep't of Labor July 2, 2013) ("*Negative Determination*").

On August 6, 2013, Plaintiffs appealed Labor's *Negative Determination* to this court. The Clerk of the Court deemed Plaintiffs' letter to be a complaint and summons. *See generally* Summons, ECF. No. 1, Compl., ECF No. 2.  In response, Labor moved for a voluntary remand "to conduct a further investigation and to make a redetermination as to whether the subject worker group was eligible for certification for TAA benefits," and the Court granted this consent motion.  Def.'s Consent Mot. for Voluntary Remand, ECF No. 7, and Order of Oct. 22, 2013, ECF No. 8.  On December 20, 2013, "based on a careful review of previously submitted information and new information obtained during the remand investigation," Labor affirmed that "the petitioning workers have not met the eligibility criteria" for TAA benefits.  Remand Results at 6.  Plaintiffs challenge Labor's Remand Results and request a second remand.[3]

### DISCUSSION

**I.      Jurisdiction & Standard of Review**

The Court has jurisdiction pursuant to 28 U.S.C. § 1581(d)(1) (2006).[4]  The Court will uphold Labor's findings of fact if "supported by substantial evidence" but may remand for further evidence to be considered "for good cause shown."  19 U.S.C. § 2395(b).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477 (1951) (internal quotation omitted).  "[T]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Former Employees of Western Digital Techs., Inc. v. U.S. Sec'y of Labor*, 36 CIT __, __, 893 F.

---

[3] Plaintiffs filed a motion for a second remand.  *See generally* Pls.' Comments.  While it is unusual to make a motion for a second remand rather than embody the request in the comments on remand, the Court appreciates that TAA cases may involve parties and counsel not familiar with this procedure and thus accepts all parties' requests in this particular case.

[4] All citations to the United States Code will refer to the 2006 edition unless otherwise stated.

Supp. 2d 1288, 1292 (2012) (quoting *Am. Textile Mfrs. Inst., Inc. v. Donovan*, 452 U.S. 490, 523 (1981)).

## II. TAA & ITAR

### A. Trade Adjustment Assistance ("TAA")

A group of displaced domestic workers may file a petition to be certified as eligible to apply for TAA by the Employment and Training Administration of Labor. The eligibility criteria for certification are met if "a significant number or proportion of the workers" have become or are threatened to become "totally or partially separated" as a result of either increased imports or a shift abroad of production or services. 19 U.S.C. § 2272;[5] *see also Former*

---

[5] 19 U.S.C. § 2272 provides, in pertinent part:

(a) **In general**
A group of workers shall be certified by the Secretary as eligible to apply for adjustment assistance under this part pursuant to a petition filed under section 2271 of this title if the Secretary determines that—
    (1) a significant number or proportion of the workers in such workers' firm have become totally or partially separated, or are threatened to become totally or partially separated; and
    (2)
        (A)
            (i) the sales or production, or both, of such firm have decreased absolutely;
            (ii)
                (I) imports of articles or services like or directly competitive with articles produced or services supplied by such firm have increased;
                (II) imports of articles like or directly competitive with articles—
                    (aa) into which one or more component parts produced by such firm are directly incorporated, or
                    (bb) which are produced directly using services supplied by such firm, have increased; or
                (III) imports of articles directly incorporating one or more component parts produced outside the United States that are like or directly competitive with imports of articles incorporating one or more component parts produced by such firm have increased; and
            (iii) the increase in imports described in clause (ii) contributed importantly to such workers' separation or threat of separation and to the decline in the sales or production of such firm; or

                                                    (footnote continued)

*Employees of Western Digital Techs., Inc.*, 893 F. Supp. 2d at 1290.  While the TAA's assistance provisions "are to be construed liberally," the "parameters of the statute cannot be ignored" and the "benefits of [TAA] are not universal." *Former Employees of Hewlett-Packard Co. v. United States*, 17 CIT 980, 986 (1993).  Accordingly, some hardship may result.  *Id*.  Case law has "consistently held that the TAA statute does not apply when a company closes because economic factors make continued operations impractical rather than due to direct import competition."  *Id*.

### B. International Traffic in Arms Regulations ("ITAR")

The U.S. Secretary of State promulgated ITAR, 22 C.F.R. §§ 120-130, implementing the Arms Export Control Act ("AECA"), codified at 22 U.S.C. § 2778.  The ACEA authorizes the President, who delegated his authority to the Secretary of State, to regulate the export and import of defense articles and military products and services.  *See* 22 U.S.C. § 2778(a); *see also Executive Order No. 11,958*, 42 Fed. Reg. 4,311 (Jan. 18, 1977).  Because products and services covered by ITAR must be domestically produced and serviced, this work cannot shift abroad.  *Id*.  Military aircraft and associated equipment are included.  *See* 22 C.F.R. § 121.1 (Cat. VIII).  Therefore, products or services covered by ITAR do not meet the criteria for TAA eligibility.

---

    (B)
        (i)
           (I) there has been a shift by such workers' firm to a foreign country in the production of articles or the supply of services like or directly competitive with articles which are produced or services which are supplied by such firm; or
           (II) such workers' firm has acquired from a foreign country articles or services that are like or directly competitive with articles which are produced or services which are supplied by such firm; and
        (ii) the shift described in clause (i)(I) or the acquisition of articles or services described in clause (i)(II) contributed importantly to such workers' separation or threat of separation.

## II. Boeing Wichita's TAA Application

At issue is Labor's negative determination of the former employees of the Boeing Wichita facility's TAA certification eligibility due to a shift abroad of production or services. *Negative Determination*, 78 Fed. Reg. at 39,776. Labor determined that the Boeing Wichita facility's certification eligibility is negated (1) by ITAR coverage and (2) by the closure of the firm due to economic hardship. *See generally* Remand Results.

During the course of its investigation, Labor discovered that the Boeing Wichita facility's maintenance and modification services were covered under ITAR and thus the work could not shift abroad. Def.'s Resp. at 11 (citing A.R. at 462, 470). "Such maintenance and modification work could only be carried out in the United States" because of ITAR coverage. *Id*. at 13 (citing A.R. at 146). The Court has previously affirmed that workers of firms whose production or services are covered by ITAR are not eligible for TAA certification. *See Former Employees of Honeywell Int'l, Inc. v. U.S. Dep't of Labor*, 33 CIT 558 (2009) (sustaining Labor's negative determination because of ITAR coverage). Boeing informed Labor that its Wichita facility was covered under ITAR and "the work that has continued to be performed here at the Wichita site has consisted only of programs owned by the U.S. and foreign military." A.R. at 24. Plaintiffs claim a mere representation by a Boeing official was insufficient investigation by Labor. Pls.' Comments at 7-11. However, a representation of ITAR coverage by a firm official on the record has been found to be sufficient to determine ITAR coverage in terms of certification eligibility. *See, .e.g., Former Employees of Honeywell Int'l,* 33 CIT at 559. Thus, Labor's determination that ITAR coverage negates TAA certification eligibility is supported by the record.

A secondary reason that Labor denied certification is because of economic hardship. Not only was there an inconsistent stream of work at the Boeing Wichita facility but also the

Case 1:13-cv-00281-GWC   Document 28   Filed 08/11/14   Page 8 of 8

**Court No. 13-00281** Page 8

remaining work was transferred to other domestic Boeing facilities. Def.'s Resp. at 11. Labor states that "the record establishes that the shifting of the services carried out at Boeing's Wichita facility was driven by a business decision unrelated to a shift in services to a foreign country." *Id*. (citing A.R. at 48-49). As noted *supra*, it is established that TAA does not apply "when a company closes because economic factors make continued operations impractical rather than due to direct import competition." *Former Employees of Hewlett-Packard*, 17 CIT at 986. Thus, Labor's determination that financial hardship negates TAA certification eligibility is also supported by the record. As stated in *Former Employees of Hewlett-Packard*, the Court "sympathizes with the difficult circumstances plaintiffs' job loss may have imposed on them, but the court is bound to apply the statute as intended by Congress." *Id*.

Because it is supported by the record, the Court must uphold Labor's negative determination. Accordingly, the Court sustains Labor's Remand Results.

## CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that Defendant's Remand Results are sustained. Judgment to enter accordingly.

/s/ Gregory W. Carman
Gregory W. Carman, Judge

Dated:   August 11, 2014
         New York, NY